**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Prager Sodaro, | No. CV-12-0371-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| The Supreme Court of Arizona; the Committee on Character and Fitness of the Supreme Court of Arizona, | |
| Defendants. | |

### I.   FACTUAL BACKGROUND

In a previous Order, this Court summarized the facts of this case as follows.

Plaintiff has been an Arizona citizen since 1999 and a licensed Illinois attorney since 1986. (Doc. 1 at 5). In five of the seven years preceding 2011, Plaintiff engaged in legal practice on behalf of clients who were not Arizona residents and had no connection to Arizona (except for one case before the Internal Revenue Service). *Id.* at 9-10. In 2011, Plaintiff applied for admission to the State Bar of Arizona pursuant to Arizona Supreme Court Rule 34(f).

Pursuant to Arizona Supreme Court Rule 34(f), to be admitted to the Arizona State Bar by Motion, Plaintiff "must have been primarily engaged in the active practice of law in one or more states, territories, or the District of Columbia for five of the seven years immediately preceding the date upon which the application is filed." Ariz. R. Sup. Ct. 34(f)(C); *see also* Ariz. R. Sup. Ct. 34(f)(3)(a-c) (defining "active practice of law").

The Arizona Supreme Court Committee on Character and Fitness, which was responsible for processing Plaintiff's application, denied the application on the basis that Plaintiff's prior legal work did not meet the definition for active practice as required by Rule 34(f). (Doc. 1 at 10). Plaintiff alleges that Defendants' definition of "the active practice of law" is unconstitutional ... .

Doc. 9 at 1-2

## II.     PROCEDURAL BACKGROUND

The Defendants originally named in this law suit were the Supreme Court of Arizona and the Committee on Character and Fitness of the Supreme Court of Arizona. This Court dismissed both of these Defendants on Eleventh Amendment Immunity grounds. Doc. 9 at 3. This Court also granted Plaintiff leave to amend. Plaintiff filed an amended complaint and named four justices of the Arizona Supreme Court as Defendants. Doc. 12.

The justices of the Arizona Supreme Court have moved to dismiss arguing that each of the following bars this suit: 1) Eleventh Amendment Immunity, 2) Absolute Judicial Immunity; 3) Ripeness; 4) the Rooker Feldman Doctrine; 5) the Younger Abstention Doctrine; and 6) Federal Rule of Civil Procedure 12(b)(6). Plaintiff responds and argues this suit is properly before this Court.

## III.    ANALYSIS

### A.     Eleventh Amendment Immunity

As this Court stated in the previous Order in this case: "The Eleventh Amendment bars suit against a state unless Congress has abrogated state sovereign immunity or the state has waived it. *Holley v. California Dep't of Corrections*, 599 F.3d 1108, 1111 (9th Cir. 2010). This protection extends to the agencies and departments of a state. *Id.*" Doc. 9 at 2. However, the *Ex parte Young* doctrine is a narrow exception to this general rule which allows government officials to be sued in their official capacity for violating federal law. *Salt River Project Agr. Imp. and Power Dist. v. Lee* (*SPR II*), 672 F.3d 1176, 1181 (9th Cir. 2012). The *Ex parte Young* exception permits only suits for prospective injunctive relief. *Demery v. Kupperman*, 735 F.2d 1139, 1146 (9th Cir. 1984). Finally, the *Ex parte Young* exception "requires a 'special relation' between the state officer sued and the challenged statute, such that the officer has 'some connection with the enforcement of the act [.]' *Confederated Tribes & Bands of Yakama Indian Nation v. Locke*, 176 F.3d 467, 469 (9th Cir.1999)." *Paisley v. Darwin*, 2011 WL 3875992, *3 (D. Ariz. 2011).

1  Here, Plaintiff argues that Eleventh Amendment immunity does not bar this suit 2 because the *Ex parte Young* exception to immunity applies. The problem with Plaintiff's 3 argument is that she sued the Justices, "in their individual capacities, and as individual 4 actors." Doc. 12 at 1. The *Ex parte Young* exception clearly applies only to government 5 officials acting in their official capacities. *SRP II*, 672 F.3d at 1181. Therefore, the amended 6 complaint against the Justices in their individual capacities must be dismissed.

7  Next, the Court must decide whether any amendment would be futile. Here, if 8 Plaintiff filed a second amended complaint and named the Justices in their official capacities, 9 such complaint would survive a motion to dismiss based on Eleventh Amendment Immunity. 10 Specifically, Plaintiff seeks only prospective injunctive relief, Plaintiff has alleged a violation 11 of federal law, and Plaintiff would be suing the government actor who she claims is violating 12 federal law in his/her official capacity. In a very similar case, the Ninth Circuit Court of 13 Appeals ruled that a plaintiff could sue the Justices of the Navajo Nation Supreme Court. 14 *Id.* In so deciding, the Court of Appeals stated, "[t]his lawsuit for prospective injunctive 15 relief may proceed against the officials under a routine application of *Ex parte Young*." *Id.* 16 at 1177. Because Plaintiff could cure this deficiency by amendment, the Court will consider 17 whether any of Defendants other arguments justify dismissal without leave to amend.

### B. Judicial Immunity

19  Generally, judges who are sued in their personal capacities for decisions made in their 20 judicial capacities are entitled to absolute judicial immunity. *Forrester v. White,* 484 U.S. 21 219, 225-26 (1988); *Mireles v Waco,* 502 U.S. 9, 11-12 (1991); *Cleavinger v. Saxner,* 474 22 U.S. 193, 199-200 (1985). Judicial immunity applies "'however erroneous the act may have 23 been, and however injurious in its consequences it may have proved to the plaintiff.'" 24 *Cleavinger*, 474 U.S. at 199-200 (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 25 (1871)). "Grave procedural errors or acts in excess of judicial authority do not deprive a 26 judge of this immunity." *Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988). 27 Moreover, "judicial immunity is not overcome by allegations or bad faith or malice . . . ." 28 *Mireles*, 502 U.S. at 11.

Again, here, Plaintiff is suing the Justices in their personal capacities. Further, Plaintiff makes no argument that the Justices are not acting in a judicial capacity. Accordingly, based on all of the cases cited above, the Justices are each entitled to judicial immunity.

As with Eleventh Amendment immunity, the Court must decide whether this defect could be cured by a further amendment to the complaint. Had the Justices been sued in their official capacities, a judicial immunity defense would not be available. For example, in *Kentucky v. Graham*, the United States Supreme Court explained,

> When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law. In an official-capacity action, these defenses are unavailable. The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment.

473 U.S. 159, 167-68 (1985) (internal citations and footnote omitted); *see also Pulliam v. Allen*, 466 U.S. 522, 541-542 (1984) ("We conclude that judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity."). As a result, this defect could be cured by amendment. Thus, the Court will continue to consider whether any of Defendants other arguments justify dismissal without leave to amend.

### C. Ripeness, *Rooker-Feldman* and *Younger* Abstention

The *Feldman* case that forms the basis of the *Rooker-Feldman* doctrine involved an attorney's denial of admission the bar. Specifically, the Court held:

> United States District Courts ... have subject matter jurisdiction over general challenges to state bar rules, promulgated by state courts in non-judicial proceedings, which do not require review of a final state court judgment in a particular case. They do not have jurisdiction, however, over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional. Review of those decisions may be had only in this Court.

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983).

The Supreme Court in *Feldman* explained this jurisdictional bar by distinguishing between actions by a state court that were considered "judicial in nature" and actions that were "legislative, ministerial, or administrative." *Feldman*, 460 U.S. at 479. The Court

- 4 -

found that the United State District Court did not have jurisdiction to review proceedings that were judicial in nature, but did have jurisdiction to hear challenges to administrative decisions. *Id.* The Supreme Court then concluded that the District Court lacked jurisdiction because the District of Columbia Court of Appeals decision to deny Mr. Feldman admission to the bar was judicial in nature. *Id.* at 479-81.

The Supreme Court reached this conclusion by finding that Mr. Feldman was in essence arguing that the rule of the District of Columbia Court of Appeals should not be applied to him. *Id.* at 480. Thus, the Supreme Court found that the District of Columbia Court of Appeals' decision was adversarial in the sense of a case or controversy and that Mr. Feldman was seeking a decision on the case as it stood, not on rights or issues that might arise in the future. *Id.* at 478-80.

Interpreting the distinction recognized by the Supreme Court, another district court has summarized the holding in *Feldman* as follows:

> In *Feldman*, frustrated bar applicants sought declaratory and injunctive relief which would have compelled their admission to the bar or allowed them to sit for the exam. They attacked both the general rule requiring graduation from an ABA-approved law school, and the application of that rule to themselves. [citation omitted]. The relief sought was thus essentially individual—the plaintiffs asked that the rules and decisions in their cases be struck down. This alone, however, is not dispositive of the issue of subject matter jurisdiction.
>
> ...
>
> In the present case, Levanti asserts that Phase I grading discriminates unconstitutionally against non-residents and seeks some sort of mathematical formula which would place him and his fellow non-resident attorney applicants on an equal footing with general bar applicants. This Court **has jurisdiction** over this constitutional challenge to the grading scheme employed by the California Committee of Bar Examiners.
>
> However, this Court **has no jurisdiction** over those aspects of the complaint which would have the Court review the California Supreme Court's adjudication of Levanti's application. In Counts IV and V plaintiff seeks, *inter alia*, an order compelling the California Supreme Court to order its Committee of Bar Examiners to conduct another hearing on his allegations of defects in the Phase I grading process. Levanti contends that the Committee and the California Supreme Court gave short shrift to his complaints and thereby denied him due process of law. Contrary to Levanti's assertion at oral argument, the California Supreme Court does have jurisdiction to hear and determine federal constitutional issues. Plaintiff raised his due process argument and others before the California Supreme Court and that tribunal

1
2
3
4
5

> denied his petition for a writ of review of his bar application. That denial constitutes a judgment on the merits. *Konigsberg v. State Bar of California*, 353 U.S. 252, 254 (1957). "In considering actions of the Committee of Bar Examiners the California Supreme Court exercises original jurisdiction and is not restricted to the limited review made by an appellate court." *Ibid.*; *see also Tofano, supra*, 718 F.2d at 314; *Brown v. Board of Bar Examiners*, 623 F.2d 605, 610 (9th Cir.1980). Review of that admissions decision of the highest court in California may only be had in the Supreme Court of the United States pursuant to 28 U.S.C. § 1257.

6 *Levanti v. Tippen*, 585 F.Supp. 499, 503 (1984) (emphasis added).

7 Thus, this Court has jurisdiction to hear what amounts to a facial attack on the rules
8 involved in Plaintiff's denial of admission to the bar. *See Doe v. Florida Bar*, 630 F.3d 1336,
9 1341-42 (11th Cir. 2011). However, this Court lacks jurisdiction to "review" Plaintiff's
10 actual denial of admission, which amounts to as-applied challenge. *Id*. at 1341.

11 Here, Plaintiff's case falls somewhat in the middle. Specifically, the language of the
12 rule is that, "The applicant shall: C. have been primarily engaged in the active practice of
13 law in one or more states, territories, or the District of Columbia for five of the seven years
14 immediately preceding the date upon which the application is filed." Rule 34(f)(3). The
15 Rule goes on, "3. For purposes of this rule, the active practice of law shall not include work
16 that, as undertaken, constituted the unauthorized practice of law in the jurisdiction in which
17 it was performed... ." *Id.*

18 Plaintiff does not challenge the language of this rule in a "facial" attack form.
19 However, Plaintiff does challenge the definition of the "active practice of law" as used by
20 the committee on character and fitness. Thus, Plaintiff challenges this underlying definition
21 as used against all applicants, including the use of the definition in her particular case.
22 Because Plaintiff challenges the definition in her particular case, these facts are very close
23 to *Feldman*; thus, the Court would not have jurisdiction over this case. The lingering
24 question is whether Defendants can avoid the jurisdiction of this Court by putting a rule in
25 place behind-the-scenes so to speak, without adopting it within the language of the formal
26 rule.

27 Neither party has cited any cases discussing how broad a "facial" attack on the rules
28 of admission may be. However, given how fact specific the interpretation of the

- 6 -

1 unauthorized practice of law is to the circumstances of Plaintiff's case, this Court concludes that Plaintiff's arguments amount to an as-applied challenge. In such a case, this Court is without jurisdiction to hear Plaintiff's claims. Therefore, this case will be dismissed.[1]

### D.     Rule 12(b)(6)

Alternatively, Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) arguing that Plaintiff fails to state a claim under any of her theories of relief. In Count I, Plaintiff alleges a violation of the Privileges and Immunities Clause of the Constitution, including the right to travel. In Count II, Plaintiff alleges a violation of the Equal Protection Clause, the Due Process Clause and the Commerce Clause.

The Court may dismiss a complaint for failure to state a claim under 12(b)(6) for two reasons: 1) lack of a cognizable legal theory and 2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief

---

[1] Defendants alternatively moved to dismiss based on the *Younger* abstention doctrine and ripeness as a prerequisite to the "case and controversy" requirement. These arguments are premised on the fact that, after Plaintiff was denied admittance to the bar by the committee on character and fitness, she failed to appeal that denial to the Arizona Supreme Court. Defendants note that the committee on character and fitness' "denial" is a "recommendation" and that under Rule 36(g), Plaintiff could have appealed to the Arizona Supreme Court. Doc. 14 at n. 7. Thus, Defendants conclude that Plaintiff's claim is either not yet ripe because the named Defendants have yet to take any action; and/or subject to the *Younger* abstention doctrine because the named Defendants might still yet act, so the state court proceeding is on-going. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987) (federal courts should not interfere with on-going state court proceedings).

The Court finds that both of these defenses would be relevant only to a challenge to Plaintiff's actual denial of admission. As discussed above, this Court is without jurisdiction to review the state's actual denial. Therefore, this Court is without jurisdiction to hear this claim regardless of these two additional potential defenses.

- 7 -

above a speculative level. *Id*. Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1202, pp. 94, 95(3d ed. 2004)).

### 1. Privileges and Immunities Clause

Plaintiff summarizes her privileges and immunities argument in her response to the motion to dismiss by alleging that Arizona treats non-residents more favorably than residents. Doc. 15 at 14. The basic purpose of the Privileges and Immunities clause was to prevent, "a State from discriminating against citizens of other States in favor of its own." *Nevada v. Watkins*, 914 F.2d 1545, 1555 (9th Cir. 1990) (quoting *Hague v. C.I.O.*, 307 U.S. 496, 511 (1939)). Under this standard, Plaintiff's theory that Arizona treats its own residents less favorably than non-residents fails to state a claim. Thus, even if this Court had jurisdiction, alternatively, Plaintiff fails to state a claim even assuming Arizona treats non-residents more favorably.

### 2. Equal Protection

Generally, to allege an equal protection violation, Plaintiff must allege that she was discriminated against as a member of an identifiable class and that the discrimination was intentional. *See Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000). In *Levanti*, the District Court noted that state citizenship and state residency are not suspect classifications. 585 F.Supp. at 507. Thus, the state procedures for bar admittance are subject to the rational basis standard. *Id.*

The "class" Plaintiff claims to be in are Arizona residents who attempt to be admitted on motion in Arizona. Doc. 15 at 13. In her response, Plaintiff does not cite a single case on the legal requirements for an equal protection claim, nor what qualifies as an identifiable class; thus, the Court is left to guess at Plaintiff's theory of an equal protection claim. This alone is insufficient to state a claim under *Twombly*.

Further, Defendants argue that they treat Arizona residents and non-Arizona residents

1  the same; in other words, they use the same definition of active practice hours for all
2  applicants (both resident and non-resident). Plaintiff does not dispute this assertion. Because
3  Defendants use the same standards for both "classes" the Court finds that Plaintiff fails to
4  state an equal protection claim.

5  To the extent Plaintiff takes issue with Defendants' definition of the unauthorized
6  practice of law, as discussed above, because that definition amounts to an as-applied
7  challenge to Plaintiff's personal denial of admission, this Court is without jurisdiction to hear
8  that challenge. Finally, although Plaintiff did not mention an equal protection class of one
9  theory, such a theory would fail for the same reason. *See generally Squaw Valley*
10 *Development Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004) (overruled on other grounds
11 as recognized by *Action Apartment Ass'n, Inc. v. Santa Monica Rent*, 509 F.3d 1020, 1025
12 (9th Cir. 2007) (discussing a class of one claim). Specifically, to consider Plaintiff as a class
13 of one would amount to an as-applied challenge to her denial of admission, over which this
14 Court lack jurisdiction.

### 3. Due Process

16 In some instances, an attorney has a property interest in her license sufficient to make
17 a due process claim. *See Doe*, 630 F.3d at 1344. The *Doe* court summarized the law as
18 follows,

> *Schware v. Board of Bar Examiners*, 353 U.S. 232, 238–39 (1957) ("A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment."); *Willner v. Committee on Character and Fitness*, 373 U.S. 96, 106 (1963) (finding that petitioner was entitled to procedural due process where he was denied admission to the New York Bar without a hearing on the charges that had been filed against him); *Shaw v. Hospital Authority of Cobb County*, 507 F.2d 625, 628 (5th Cir.1975) (holding that "the right to practice any of the common occupations of life, and for others to engage the individual to perform those acts which are his occupation" are rights protected by the Fourteenth Amendment).

25 *Id.*

26 Here, Plaintiff does not make a specific Due Process claim in her amended complaint
27 beyond including the words "Due Process" in a heading. Doc. 12 at 16. In her response to
28 the motion to dismiss, she does not mention a Due Process violation. Accordingly, Plaintiff

- 9 -

fails to state a Due Process claim under *Twombly*.

### 4. Commerce Clause

Defendants argue that because Congress has not acted, Plaintiff's only possible argument under the Commerce Clause is a dormant Commerce Clause claim. Doc. 14 at 13, n. 10. In her response, Plaintiff merely states that restrictions on out-of-state attorneys affect interstate commerce. She does not dispute Defendants' characterization of her claim. Thus, the Court agrees that a dormant Commerce Clause claim is her only possible theory in this case.

In *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), the Court stated that when a state regulation promotes a legitimate local public interest that has only incidental effects on commerce, the regulation is constitutional unless the burden on commerce is excessive compared to the local benefits. Defendants argue, primarily, that states have a legitimate, substantial interest in regulating the practice of law for public protection purposes. Doc. 14 at 14 (citing *Hawkins v. Moss*, 503 F.2d 1171, 1175 (4th Cir. 1974)).

Plaintiff argues that the effect of the way Defendants interpret their rules is economic protectionism. However, Plaintiff alleges no facts and cites no law to explain how Defendants' rule amounts to a Commerce Clause violation.

More specifically, the Court finds Plaintiff has failed to allege any facts to support a claim that there is a "burden" on commerce; Plaintiff only argues that there, hypothetically, is an "affect" on commerce. Further, Plaintiff offers no facts or law to refute Defendants' argument that a state has the right to pass regulations on the practice of law because of a recognized public interest. Accordingly, Plaintiff has failed to state a claim for a Commerce Clause violation.

### IV. CONCLUSION

As indicated above, the Court finds this case must be dismissed because the Court is without jurisdiction to hear it under the *Rooker-Feldman* doctrine. The Court finds any amendment would be futile because it could not overcome this jurisdictional bar. Additionally, and alternatively, the Court finds that even if this Court had jurisdiction,

1  Plaintiff failed to state a claim under any of her four theories of a constitutional violation.
2  Because the Court has already given Plaintiff leave to amend, and she still failed to allege
3  any facts or law with sufficient specificity to support her claims as required by *Twombly*, the
4  Court finds giving this Plaintiff any further opportunity to amend would be futile.[2]

5  Accordingly,

6  **IT IS ORDERED** that the motion to dismiss (Doc. 14) is granted, Plaintiff to take
7  nothing, and the Clerk of the Court shall enter judgment in favor of Defendants accordingly.

8  DATED this 18th day of March, 2013.

James A. Teilborg
Senior United States District Judge

---

[2] "To state a federal claim, it is not enough to invoke a constitutional provision or to come up with a catalogue of federal statutes allegedly implicated. Rather, as the Supreme Court has repeatedly admonished, it is necessary to state a claim that is substantial." *Noatak v. Hoffman*, 896 F.2d 1157, 1166 (9th Cir. 1990) (Kozinski, J. dissenting) (majority opinion *rev'd* 501 U.S. 775 (1991)).